C/M
D&F

FILED
IN CLERKS OFFICE
U.S. ... COURT E.D. N.Y.
★ MAY 25 2005 ★
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HYGINUS EZEOKOBE and OKOYE IKE EMMANUEL

Plaintiffs,

- against -

HUAL NORTH AMERICA INC., M.V. HUAL TRACER, and M.V. OCEAN ACE

Defendants.

---

**04-CV-2495 (ERK) (MDG)**

**MEMORANDUM & ORDER**

KORMAN, C.J.:

Plaintiffs, Hyginus Ezeokobe ("Ezeokobe") and Okoye Ike Emmanuel ("Emmanuel"), allege that the automobile they contracted to have shipped by defendant Hual North America, Inc. ("Hual") arrived at its intended destination severely damaged and that such damage occurred while the vehicle was in Hual's possession. Hual has moved to dismiss plaintiffs' claims as time-barred under §1303(6) of the United States Carriage of Goods by Sea Act ("COGSA"), or, in the alternative, pursuant to the forum selection clause contained in the governing Bill of Lading. Plaintiffs counter that the defendant is equitably estopped from asserting a statute of limitations defense and that the forum selection clause is invalid and should not govern the present dispute.

Background

The facts as set forth below are drawn from the complaint, the allegations of which I accept as true on this motion to dismiss. On November 2, 2001, plaintiff Ezeokobe delivered to Transphere Inc., an agent of Hual, a 1997 Dodge Caravan for carriage from Livonia, Michigan to Baltimore, Maryland, and for further shipment by sea from Maryland to Lagos, Nigeria. Co-plaintiff Emmanuel, the consignee, was the intended recipient of the vehicle. Ezeokobe prepaid Transphere

Inc. for the shipment in the amount of $1,827.00, but was not informed the he had the option of declaring the value of the vehicle in return for a higher freight payment. Ezeokobe was presented with a paid invoice, but was not provided with a bill of lading. Subsequently, on December 5, 2001, Ezeokobe received a Bill of Lading, issued by Hual, which stated that the port of discharge would be Lagos, Nigeria and that the carrying vessel would be the "Hual Tracer."

Defendants deviated from the intended course and, without authorization from plaintiffs, unloaded the automobile at the port of Lome, Togo, where it would remain for an estimated four months. In May 2002, the vehicle was loaded onto the "M.V. Ocean Ace" for transport to Lagos, Nigeria. Some five months after departing the United States, the automobile arrived in Lagos, Nigeria, damaged beyond repair. Plaintiffs refused to accept delivery of the damaged vehicle and promptly demanded compensation from Hual in a letter dated May 31, 2002. See Declaration of Barbara J. Lauth ("Lauth dec."), exhibit C. Hual was uncooperative in helping plaintiffs determine how and when the damage occurred and further insisted that plaintiffs pay the customs duty and take possession of the vehicle in its damaged condition.

In a letter from Hual's assistant claims manager, Barbara J. Lauth, to Augustine O. Igwe, then plaintiffs' counsel, Hual acknowledged receipt of plaintiffs' claim "without admission of liability and with full reservation of all defenses contained in the Bill of Lading and/or otherwise." Declaration of Augustine O. Igwe, Esq. ("Igwe dec."), exhibit B. The letter further stated that Hual required a copy of the "Delivery receipt/Discharge report from Port of Discharge" in order to further investigate plaintiffs' claim. Id. Plaintiffs made several attempts to procure the requested documentation, but were informed by the Nigerian authorities that in order to succeed, the document request would have to originate from Hual. Plaintiffs relayed this information to Ms. Lauth. Igwe

dec. ¶6.

In a letter dated September 27, 2002, Ms. Lauth stated that Hual had been informed by the discharging agent that it was the responsibility of the consignee to document any damage to the shipment upon receipt. The letter further stated that the discharging agent does not keep copies of receipts and, therefore, that the onus remained on the claimant to prove that the alleged damage had indeed occurred when the unit was in Hual's custody. The letter concluded by stating that Hual was prepared to offer the $500.00 per package limitation, as stated in the Bill of Lading, as a full and final settlement of plaintiffs' claim. Igwe dec., exhibit C.

Plaintiffs' counsel declined Hual's $500.00 offer in a letter to Ms. Lauth dated November 5, 2002. In the letter, counsel observed that "[w]e both recognize the difficulties inherent in the attempt to secure the discharge condition report when the discharging agent insists that my client must first accept delivery of the damaged vehicle." Igwe dec., exhibit D. As an alternative means of verifying the condition of the vehicle, counsel enclosed with the letter a report prepared on plaintiffs' behalf by an independent cargo inspection firm and dated October 2002, which detailed the extent of the damage. See Igwe dec., exhibit E. The letter also contained an estimate of the damage inflicted on the vehicle and concluded by stating that plaintiffs were awaiting a reasonable offer from Hual. Igwe dec., exhibit D. Plaintiffs' counsel and Ms. Lauth continued to discuss resolution of the matter by telephone, though these discussions were unsuccessful.

Although Hual was aware as early as September 2002 that plaintiffs could not obtain the relevant discharge report, Hual nevertheless continued to discuss settlement. In March 2004, however, Ms. Lauth informed plaintiffs' counsel that no further action could be taken without the discharge report and that, as a result, Hual intended to close its file on plaintiffs' claim.

On June 16, 2004, plaintiffs initiated this action, seeking compensatory damages in the amount of $20,000.00 and punitive damages of $50,000.00, as well as fees and costs. On November 16, 2004, Hual moved to dismiss plaintiffs' claims. Oral argument on the motion was heard on May 6, 2005.

## Discussion

### 1. The Forum Selection Clause

Hual contends that plaintiffs' claims should be dismissed because plaintiffs have brought this suit in an improper venue. Hual points to the forum selection clause contained in the Bill of Lading, which provides:

> Any claim or dispute arising under this Bill of Lading shall be determined by the courts of the country where the Carrier has its principal place of business and according to the laws of that country except as provided elsewhere herein. Notwithstanding the aforesaid, the Carrier shall be entitled to sue the Merchant in any competent jurisdiction.

Declaration of K.C. Okoli, Esq. ("Okoli dec."), exhibit F.

Defendant asserts that the Carrier identified in the Bill of Lading is Hual A/S, which has its principal place of business in Norway. Plaintiffs counter that their suit names Hual North America as the defendant, not Hual A/S, and that substantial discovery will be needed to confirm Hual North America's principal place of business. Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiffs' Memorandum"), at 3; see also Complaint ¶3 ("Venue is proper in this district, based upon the fact that the office of the principal defendant in this action is located within this district."). Plaintiffs point out that the Bill of Lading was issued in Jericho, New York, that the address provided for notification of an impending claim was "500 N. Broadway, Jericho, New York," Hual North America's postal address, and that no other documents pertaining to the shipment

were executed in Norway. Plaintiffs' Memorandum at 4. Plaintiffs argue further that intuition suggests that Hual North America, given its status as an American corporation, does not have a principal place of business in Norway.

In addition, plaintiffs also allege that they were not presented with the Bill of Lading at the time they executed the shipping contract on November 2, 2001. According to plaintiffs, at the time they contracted to ship their vehicle, they received only a paid invoice, and did not receive the Bill of Lading until December 5, 2001, more than a month later. There is nothing in the existing record that suggests whether the terms of the Bill of Lading were conveyed to plaintiffs at the time the shipping contract was executed, or whether the forum selection clause was ever discussed. In short, plaintiffs suggest, significant questions remain as to the Carrier's principal place of business and whether the provisions of the Bill of Lading should be enforced, rendering inappropriate a dismissal based on its terms.

Hual responds that any delay in plaintiff's receiving a copy of the Bill of Lading is irrelevant, because it is well established that the provisions of a bill of lading will be enforced even it is not issued until some time after a carrier has taken possession of cargo. It is true that courts have enforced the terms of bills of lading that were not immediately delivered. See, e.g., Anvil Knitwear, Inc. v. Crowley American Transport, Inc., No. 00-Civ-3243 (NRB), 2001 U.S. Dist. Lexis 10684 at *7 (S.D.N.Y. July 27, 2001) ("It is not unusual to issue a bill of lading after a carrier has taken possession of cargo and courts have regularly held that this does not prevent parties from being bound by its terms."); Berkshire Knitting Mills v. Moore-McCormack Lines, Inc., 265 F. Supp. 846, 848 (S.D.N.Y. 1965) ("The fact that the bill of lading had not yet been issued did not alter the contractual relationship of the parties."). Indeed, section 1303(3) of COGSA gives shippers the right

to demand a bill of lading from a carrier at the time cargo is delivered for shipment. See 46 U.S.C. § 1303(3); see also Mack Trucks, Inc. v. Farrell Lines, Inc., No. 89-Civ.1946, 1990 WL 3926 at *2 (S.D.N.Y. Jan. 16, 1990).

Nevertheless, even if as a general matter a delay in providing a bill of lading will not excuse a shipper from its provisions, whether to enforce a forum selection clause of which a shipper has no notice presents a separate and distinct issue. Because the damages sought here are relatively small, and the cost of litigation in a foreign forum relatively high, enforcing the forum selection clause may have the practical result of making recovery unlikely, if not impossible. See generally Indussa Corp. v. S.S. Ranborg, 377 F.2d 200, 202-04 (2d Cir. 1967); C.A. Seguros Orinoco v. Naviera Transpapel, C.A., 677 F. Supp. 675, 683 (D.P.R. 1988) ("The idea is that since it would not be worth the added expense to litigate over a small amount in dispute in another country, meritorious claims will be chilled and, consequently, cargo interests will suffer."). A clause that has such an effect should not be enforced in the absence of at least minimal efforts to notify a party of its existence.

In Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), the leading case upholding the validity of forum selection clauses, the Supreme Court implied that such clauses would not be enforced in the absence of advance notice. Thus, it observed at the outset of its discussion of the enforceability of the forum selection clause that "we do not address the question whether respondents had sufficient notice of the forum clause . . . [because they] essentially have conceded that they had notice of the forum-selection provision." Id. at 590. Of course, it would have been unnecessary to address the question of notice at all unless the failure to provide notice would have affected the enforceability of the forum selection clause. Indeed, the Ninth Circuit has concluded that Carnival Cruise Lines did not control where notice was lacking, holding that a contract provision limiting

liability was unenforceable because its meaning had not been reasonably communicated to a cruise ship passenger. See Wallis v. Princess Cruises, Inc., 306 F.3d 827, 839-40 (9th Cir. 2002) (noting that a liability "limitation must be reasonably communicated before it can bind a passenger under federal maritime law," and that a clause which "does not meaningfully inform a passenger of a liability limitation . . . is therefore unenforceable").

This conclusion is not undermined by the recent holding that foreign arbitration clauses contained in bills of lading – a sub-set of forum selection clauses – "are not invalid under COGSA in all circumstances." Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer ("Sky Reefer"), 515 U.S. 528, 541 (1995) (applying the Carnival Cruise Lines holding in that context). Notably, in Sky Reefer, as arbitration went forward overseas, the district court retained jurisdiction over the case, and therefore had "the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the . . . laws has been addressed." Id. at 540. As the Court noted, "[w]ere there no subsequent opportunity for review and were we persuaded that 'the choice-of forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies [under COGSA],' the forum selection clause would be condemned as against public policy." Id.

Courts confronting foreign forum selection clauses after Sky Reefer have generally held that, while such clauses are not automatically invalid under COGSA, "the presumption of validity attaching to a mandatory forum selection clause may be overcome by a clear showing that the clause is unreasonable." Central National-Gottesman, Inc. v. M.V. Getrude Oldendorff, 204 F. Supp. 2d 675, 678 (S.D.N.Y. 2002); see also Vigilant Ins. Co. v. Nippon Yusen Kaisha (N.Y.K. Line), No. 97-Civ-7517 (DLC), 1998 WL 391116 at *1 (S.D.N.Y. July 14, 1998).

> A clause can be unreasonable if: 1) its incorporation into the agreement was the product of fraud or overreaching; 2) the complaining party will be deprived of its day in court due to the grave inconvenience of the selected forum; 3) the chosen law is manifestly unfair so as to deprive plaintiff of a remedy; or 4) the clause is in contravention of a strong public policy of the forum state.

Central National-Gottesman, 204 F. Supp. at 678 (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993)). In an opinion issued three years after Sky Reefer was decided, the Second Circuit reaffirmed that a forum selection clause will not be enforced when the party resisting enforcement makes a "clear showing . . . that enforcement would be unjust or that the clause is invalid for such reasons as fraud or overreaching." Evolution Online Systems, Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 510 (2d Cir. 1998) (internal quotation marks and citation omitted). The insertion of a forum selection clause in a bill of lading without the knowledge of the shipper is a kind of overreaching that should preclude enforcement of the clause when it would have the effect of extinguishing the cause of action.

This consideration aside, even if the forum selection clause was otherwise valid, there are issues of fact remaining that make it inappropriate to dismiss plaintiffs' claims on the basis of the forum selection clause. A genuine question exists as to whether Hual A/S or Hual North America should be deemed "the Carrier" referenced in the Bill of Lading and where these entities maintain their principal places of business. Accordingly, it would be inappropriate to grant Hual's motion to dismiss on the basis of the Bill of Lading's forum selection clause.

2. The Statute of Limitations

Although I conclude that it is inappropriate to dismiss plaintiffs' claims on the basis of the forum selection clause of the Bill of Lading, Hual also contends that plaintiffs' claims should be dismissed as time-barred. The provisions of the United States Carriage of Goods by Sea Act apply

to "every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States." 46 U.S.C. §1300. Specifically, COGSA states, in part, that "the carrier and ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. §1303(6). COGSA was expressly incorporated into the Bill of Lading executed by the parties, the relevant provision of which provides as follows:

> Notwithstanding any language to the contrary in this Bill of Lading, if goods are shipped to or from the United States, this Bill of Lading shall have effect subject only to the provisions of the United States Carriage of Goods by Sea Act, approved April 16, 1936, which shall supersede all other acts, statutes, conventions, and treaties and which shall, alone, be deemed incorporated herein.

Okoli dec., exhibit F.

After prepaying freight charges and delivering the automobile, plaintiff Ezekobe received the Bill of Lading, dated December 5, 2001. The automobile arrived in Lagos, Nigeria in May 2002, an estimated five months after departing from Baltimore. Plaintiffs' counsel notified Hual of the impending claim by letter dated May 31, 2002, noting that Hual's failure to compensate plaintiffs adequately would leave plaintiffs "no choice but to institute appropriate legal action." Lauth dec., exhibit C. However, plaintiffs' counsel continued to discuss the matter with Hual for almost two years, through at least March 2004, without filing suit. Indeed, plaintiffs did not move forward with their lawsuit until they retained new counsel, who initiated this action. However, plaintiffs' complaint is dated June 16, 2004, some two years after the arrival of the automobile in Nigeria. Thus, plaintiff's complaint is plainly untimely unless COGSA's one year limitations period is somehow tolled. See 46 U.S.C. § 1303(6) (discharging the carrier and ship of liability if suit is not

executed within one year of delivery); M.V.M., Inc. v. St. Paul Fire and Marine Ins. Co., 156 F. Supp. 879, 883 (S.D.N.Y. 1957) (stating that the one year time-for-suit clause contained in COGSA "is one which extinguishes the cause of action itself, and not merely the remedy").

"The general rule is that a statute of limitations may be tolled – that is, arrested – on the basis of one or the other of two common law doctrines: equitable estoppel and equitable tolling." Williams v. Sims, 390 F.3d 958, 959 (7th Cir. 2004). The latter doctrine, equitable tolling, "refers to situations in which, without fault by the defendant, the plaintiff is unable to sue within the statutory period." Id. at 960. Equitable tolling is appropriate in situations including those in which, despite the exercise of due diligence, a plaintiff cannot discover a wrongdoer's identity, or facts essential to establishing a valid cause of action. Id. Plainly, equitable tolling is inapplicable here. Within a month after the damaged vehicle arrived in Nigeria, plaintiffs were aware of all the facts necessary to support their claim. Indeed, their counsel's letter of May 31, 2002 conveyed as much. Thus, this action will be barred by COGSA's one-year time-for-suit clause unless Hual is prevented from invoking the one-year limitations period under the doctrine of equitable estoppel.

Plaintiffs assert that the defendant is equitably estopped from invoking a time-bar defense because defendant lulled plaintiffs' into believing that defendants "would consider their claim in good faith, on the merits." Plaintiffs' Memorandum at 5. According to plaintiffs, Hual acted in bad faith by continuing to insist plaintiffs provide the discharge report while knowing plaintiffs could not obtain it, even after plaintiffs provided Hual with an independent report that documented their cargo had been seriously damaged. Plaintiffs posit that by engaging in ongoing discussions as to a possible settlement of plaintiffs' claims, Hual implied that it would settle the matter without invoking COGSA's one-year limitations period. Plaintiffs appear to suggest here that "pending

settlement negotiations, regardless of what is said or done in them, should toll the statute of limitations." Allison v. Frito-Lay, Inc., No. 91-4193-C, 1992 WL 123799 (D. Kan. Mar. 27, 1992). Unfortunately for plaintiffs, however, "[f]ederal case law . . . does not support the plaintiffs' blanket approach." Id.

A defendant will be estopped from asserting a statute of limitations defense when there is "conduct by the defendant that prevents the plaintiff from suing within the statutory period." Williams, 390 F.3d at 959. Equitable estoppel will be applied, for example, when a defendant has fraudulently concealed from the plaintiff the existence of a claim, id., or when the plaintiff can show that he was "misled by the defendants into reasonably and justifiably believing that the statute of limitations would not be used as a defense or would be extended." Mikinberg, et. al., v. Baltic S.S. Co., 988 F.2d 327, 331 (2d Cir. 1993).

Here, plaintiffs cannot argue that Hual misled them into reasonably believing that defendant intended to disregard a statute of limitations defense. In her letter dated February 21, 2002, Ms. Lauth acknowledged receipt of plaintiffs' claim and expressly refrained from conceding liability. Igwe dec., exhibit B. Most significantly, in the letter Hual expressly reserved all relevant defenses. Id. ("Receipt is acknowledged of the above claim, received without admission of liability and with full reservation of all defenses contained in the Bill of Lading and/or otherwise." (emphasis added)). Furthermore, in subsequent written correspondence, Hual never intimated that it would disregard a time-bar defense. For example, in a letter dated September 27, 2002, Hual offered payment of the $500.00 per unit limitation incorporated in the Bill of Lading as full and final settlement of the claim, without any suggestion that it would waive any defense or agree to toll the limitations period.

It is not disputed that Hual was aware as early as September 2002 both of plaintiffs' claim,

as well as of their inability to obtain the requested discharge report. Hual nevertheless continued to engage in discussions regarding resolution of the claim until March 2004, when it changed course and indicated that it intended to dismiss the claim due to plaintiffs' failure to obtain the discharge report. However, the mere fact that Hual engaged in settlement discussions with plaintiffs throughout the one-year limitations period is insufficient for the purpose of tolling the time within which suit had to be filed. Simply put, "the running of a limitations period is not suspended by settlement negotiations." Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 875 (7th Cir. 1997); see also Malgor & Co. v. Compania Trasatlantica Espanola, S.A., 931 F. Supp. 122, 125 (D.P.R. 1996) ("[M]ere settlement negotiations are not sufficient to equitably estop a carrier from raising the statute of limitations defense."); Maersk Inc., v. Am. Midwest Commodities Export Cos., U.S. Dist. LEXIS 12219, *20 (S.D.N.Y. 1998) (declining to toll the statute of limitations even though the parties had continuously engaged in settlement discussions and stating that "[w]hile parties are encouraged to settle matters out of court, defendants failure to bring a timely lawsuit cannot be overlooked").

When plaintiffs found themselves in the precarious position of having failed to acquire the discharge report as the end of the one-year window for suit approached, they should have proceeded to initiate suit in order to preserve the vitality of their claim. "The one year statute of limitations provided defendants with ample opportunity to discuss settlement. As the end of the limitations period approached without a resolution in sight, defendants should have exercised their legal rights." Id.; see also Doe, 112 F.3d at 875 ("The plaintiff could of course have filed the suit yet continued negotiating a settlement."). "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984).

Plaintiffs also assert that, in breach of the express terms of the contract of carriage, Hual unreasonably and unjustifiably deviated from the intended route of shipment and discharged the vehicle in Lome, Togo, where it remained for an estimated four months. This allegation, too, is insufficient to excuse the plaintiffs' failure to timely file suit, as an unreasonable deviation from the intended course of shipment is immaterial to issues concerning the timeliness of suit. See Mesocap Ind. Ltd. v. Torm Lines, 194 F.3d 1342, 1344 (11th Cir. 1999) ("[A]n unreasonable deviation logically disturbs only the parties' expectations concerning the risk of loss, but not their expectations about when they can sue."); Bunge Edible Oil Corp. v. M/V Torm Rask, 949 F.2d 786, 788 (5th Cir. 1992) ("An unreasonable deviation does not prevent a carrier from invoking the one-year limitations period under COGSA."). Thus, even if the alleged deviation was unreasonable, this does not preclude Hual from asserting the time-bar defense based on COGSA's one-year limitations period.

In short, because plaintiffs failed to initiate suit within the one-year period provided under COGSA and because tolling of the limitations period is inappropriate under the circumstances, plaintiffs' claim must be dismissed as time-barred.

## Conclusion

The defendant's motion to dismiss the complaint is granted.

**SO ORDERED.**

Edward R. Korman
United States District Judge

Dated: Brooklyn, New York
May 20, 2005